UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMMY JACKSON,

             Plaintiff,

   v.

KING COUNTY, *et al*.,

             Defendants.

CASE NO. 2:23-cv-00774-RSL

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 16. Plaintiff alleges that defendants failed to accommodate her religious beliefs in violation of Title VII, 42 U.S.C. § 2000e, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.030, *et seq*. Defendants argue that the claims fail as a matter of law because plaintiff's objections to the COVID-19 vaccine were not religious in nature and could not be accommodated without undue hardship.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 1

motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 2

# BACKGROUND

On August 10, 2021, the King County Executive issued an order requiring all County executive branch employees to be fully vaccinated against COVID-19 by October 18, 2021, unless they were entitled under law to an accommodation on account of disability or religious belief. Exec. Order No. ACO-8-27-EO (found at https://kingcounty.gov/en/search).[1] At the time, plaintiff was employed as a Transit Operator with King County Metro Transit. On September 3, 2021, plaintiff claimed a religious exemption to the vaccination requirement and requested accommodation. Dkt. # 19-1. She notified her employer that her "body is the temple of the Holy Spirit" which she is not permitted to defile with anything harmful, that coerced medical treatment goes against her belief in the right of conscience to control her own medical decisions, that she must rely on the mercy and love of God for her hope, and that partaking of a vaccine "developed, produced or tested using aborted fetuses[] makes [her] complicit in an action that goes against all [her] religious faith." Dkt. # 19-1 at 4.

Plaintiff was granted an exemption from the vaccination mandate and met with human resources and her shop steward to identify potential accommodations and to fill in a request form. Dkt. # 19 at ¶¶ 11 and 21; Dkt. # 19-2 at 2. Plaintiff proposed that she be permitted to "[c]ontinue to wear a mask and gloves, social distancing, shields on bus, weekly testing if necessary, continue to have a very short interaction with riders and

---

[1] The Court takes judicial notice of the fact that the conduct of which plaintiff complains occurred during the COVID-19 pandemic and of the cited Executive Order. *Denis v. Ige*, 538 F. Supp. 3d 1063, 1068-69 (D. Haw. 2021) (taking judicial notice of public health statements and emergency proclamations published on the internet).

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 3

minimal time in base with coworkers." Dkt. # 19-2 at 2. Defendants considered plaintiff's proposed accommodations as well as approximately 30 other options, but found that plaintiff would be unable to perform the essential functions of her job if she were to maintain a safe distance from passengers. Dkt. # 19-2 at 4-6. Defendants concluded that an unvaccinated transit operator posed a risk to the health and safety of herself, her coworkers, and the passengers and that the risk could not be adequately reduced by any of the accommodations that had been considered. Dkt. # 19-2 at 6; Dkt. # 19-3 at 2.

Plaintiff's request for an accommodation was denied on December 17, 2021. Dkt. # 19-3. She requested a *Loudermill* meeting, at which she asserted that COVID-19 vaccines are ineffective, they cause severe negative reactions including death, and the mandate was illegal. Dkt. # 19-5 at 3-4. Plaintiff maintained that, because the vaccines are hazardous to life, she could not accept the vaccine without affronting her Creator. Dkt. # 19-4 at 3-4. Plaintiff's employment with King County Metro was terminated on March 18, 2022. Dkt. # 19-6.

## DISCUSSION

To allege a prima facie case of religious discrimination under a failure-to-accommodate theory, an employee must show that "(1) she had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected her to an adverse employment action because of her inability to fulfill the job requirement." *Keene v. City and County of San Francisco*, No. 24-1574, 2025 WL

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 4

341831, at *2 (9th Cir. Jan. 30, 2025) (unpublished) (internal citations, quotation marks, and alterations omitted). Similarly, a prima facie claim of failure to accommodate religious practices under the WLAD requires a showing that (1) plaintiff had a bona fide religious belief, the practice of which conflicted with employment duties; (2) she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 501-02 (2014). Once a plaintiff has alleged a prima facie case of religious discrimination, the burden shifts to the employer to show "that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)). "Undue hardship is shown when a burden is substantial in the overall context of an employer's business." *Keene*, 2025 WL 341831, at *2.

**A. Bona Fide Religious Belief That Conflicts With Employment Duty**

Defendants argue that plaintiff's objections to the COVID-19 vaccination requirement were not based on any religious belief, but rather on her fear of negative side effects and her belief that her immune system could fight off the virus without a vaccination.[2] According to the Equal Employment Opportunity Commission ("EEOC"), a

---

[2] Plaintiff suggests that defendants waived any challenge to the religious nature of her exemption request when it granted the request in 2021. Courts have generally rejected this type of estoppel argument, *Bartholomew v. Washington*, 93 F. Supp.3d 1107, 1113 (W.D. Wash. 2023), and plaintiff offers no reason why she should be relieved of the burden of establishing the existence of a bona fide religious belief.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 5

bona fide religious belief that triggers an employer's duty of accommodation is one that is sincerely held. U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2021-3, Section 12: Religious Discrimination, § 12-I(A)(2) (Jan. 15, 2021). A plaintiff's "religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Keene v. City and Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at * 2 (9th Cir. 2023) (unpublished) (citations omitted). Nevertheless, courts need not accept conclusory assertions that a particular belief is "religious," *Bolden-Hardge v. Off. of the Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023), and "a 'threadbare reference' to a plaintiff's religious beliefs is insufficient to satisfy the first element of her prima facie case for Title VII discrimination," *Bird v. Randol*, No. 6:23-CV-1678-MC, 2024 WL 964244, at *3 (D. Or. Mar. 6, 2024).

In October 2021, the EEOC published guidance regarding a wide range of COVID-19 issues in the workplace, including how employers should respond to reasonable accommodation claims based on religious objections to vaccinations. The publication was most recently updated on May 15, 2023. The EEOC made clear that:

> Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII. However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 6

What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws at L.2 to L.3, U.S. Equal Emp. Opportunity Comm'n (Oct. 25, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L. Thus, the first question before the Court on this motion to dismiss is whether plaintiff has plausibly alleged that her objections to the COVID-19 vaccination mandate arose from her religious beliefs as opposed to her social/philosophical/medical views and/or personal preferences. *See Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) (citing the EEOC's guidance for the proposition that "an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature").

Plaintiff objected to receiving the COVID-19 vaccine on a number of grounds, one of which was that the vaccine was derived in some way from aborted fetus cells. The Ninth Circuit has held that this type of objection, if sincerely held, can support a Title VII religious accommodation claim. *Keene v. City and County of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (unpublished). Defendants argue that, although plaintiff used the correct language in her request for an exemption, discovery established that her objections to the vaccine were not, in fact, motivated by a concern regarding how it was developed or objections to abortion. Defendants cite to her deposition testimony in which she recounts a violent adverse reaction to a flu vaccine years earlier and her subsequent decision to forego vaccines for fear of another negative reaction,

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 7

preferring instead to trust her body's immune system for protection. Dkt. # 21-1 at 33-34. Plaintiff also states, however, that when her employer mandated that she receive the COVID-19 vaccine, she sought additional information regarding that particular vaccine and concluded that "[h]ow it was processed and manufactured . . . conflicted with [her] religious beliefs about using aborted fetus tissues in cells." Dkt. # 21-1 at 35. She believed that aborted fetal cells were in the vaccine and "did not want to put that in [her] body." Dkt. # 21-1 at 35.

There is evidence in the record that plaintiff misunderstood the role of immortalized human embryonic cells in the development of the COVID-19 vaccines. They are not, as plaintiff believed, in the vaccines themselves but were rather used during the development process to confirm that Pfizer and Moderna's mRNA vaccine instructions would work in human cells. Dkt. # 17-1 at 28. Plaintiff takes other medications that were similarly developed using fetal cell lines, apparently without investigation. Dkt. # 17-1 at 28; Dkt. # 21-1 at 49-50. Defendants therefore argue (a) that plaintiff's religious objections to the COVID-19 vaccine were based on an incorrect factual premise and/or (b) that her objections were insincere since she regularly takes other medications that similarly relied on fetal cells in the development and testing phases. As discussed above, a "religious belief need not be consistent or rational to be protected under Title VII . . . ." *Keene*, 2023 WL 3451687, at * 2. Scientific truth is hardly the standard against which a religious belief is measured, and nothing in the record shows, as a matter of law, that plaintiff's assertion was not sincere, however misguided and/or factually unsupported. While defendants may be

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 8

able to convince the jury that plaintiff's assertion of a religious belief was merely a convenient packaging for her long-standing, secular aversion to vaccines in general,[3] they are not entitled to summary judgment on the issue.

**B. Undue Hardship**

Title VII requires that employers "reasonably accommodate... an employee's or prospective employee's religious observance or practice" unless the employer is "unable" to do so "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). A "hardship is more severe than a mere burden" and the "modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Groff v. DeJoy*, 600 U.S. 447, 469 (2023). To establish undue hardship, an employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business," taking into account "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating costs of an employer." *Id.* at 470 (internal citation, quotation marks, and alterations omitted).

---

[3] During her deposition, plaintiff made statements that could reasonably be interpreted as an admission that the use of fetal cells in the development or manufacture of the COVID-19 vaccine was not the reason she refused the vaccine and that she would have refused the vaccine even if fetal cells had not been used. Dkt. # 21-1 at 37. She also all but admitted that she does not check to make sure that drugs and medical interventions she is taking did not use immortalized human embryonic cells in their development processes. Taking the evidence in the light most favorable to the non-moving party, however, the record as a whole arguably supports a finding that plaintiff's willingness to put her job in jeopardy was, at least in part, due to a religious objection to this particular vaccine.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 9

      In the context of COVID-19 vaccine accommodation cases, courts have found that non-economic costs, such as adverse impacts on an employer's mission and potential safety risks, are relevant factors to be considered. *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135, 1157-59 (D. Or. 2024); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp.3d 1117, 1134–35 (C.D. Cal. 2023). *See also Groff*, 600 U.S. at 475-76 (J. Sotomayor, concurring) (non-COVID case acknowledging that "the conduct of the employer's business" includes the business' labor force, making deprivations and hardships imposed on co-workers relevant to the undue hardship analysis); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (non-COVID case acknowledging spiritual costs). In addition, the reasonableness of an accommodation must be evaluated based on the knowledge and information available to the employer at the time the accommodation decision was made. *Efimoff v. Port of Seattle*, No. 2:23-CV-01307-BAT, 2024 WL 4765161, at *13 (W.D. Wash. Nov. 13, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1150, 1152, 1158. Finally, the Court agrees with defendants that, unless there is some articulable, fair basis to differentiate one employee's request for an accommodation from another, one of the relevant factors that must be considered is the number of employees seeking the same accommodation and the cumulative impact granting those requests would have on the conduct of the employer's business. *See Lavelle-Hayden*, 744 F.Supp.3d at 1152-53.

      By the winter of 2021-22, the Pacific Northwest had lived through two years of COVID-19 infections, and it was generally understood that the SARS-CoV-2 virus spread

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 10

from person to person through aerosol transmission,[4] that infected persons could spread the virus before the onset of symptoms, and that older adults or those with certain underlying medical conditions were at higher risk for developing a severe, potentially deadly, COVID-19 illness. Dkt. # 17-1 at ¶ 8.[5] Transit workers were considered essential and faced a relatively high risk of contracting and transmitting COVID-19, with elevated outbreak incidence rates and elevated mortality rates. Dkt. # 17-1 at ¶ 38. Two King County Metro bus drivers died from complications of the virus before vaccines became available. Dkt. # 18 at ¶ 37. In an effort to keep operators and customers safe, King County Metro required transit operators to utilize safety measures, such as wearing masks, wiping down surfaces as time permitted, and utilizing protective plastic shields. Dkt. # 18 at ¶¶ 34-36.

  The COVID-19 vaccines were released by different manufacturers and for different populations between December 2020 and January 2022. Dkt. # 17-1 at ¶¶ 15-17 and 26-27. The vaccines both decreased the risk of becoming infected and decreased the severity of the disease if infection occurred. Dkt. # 17-1 at ¶ 37. By the time the Delta variant of the COVID-19 virus became prevalent in the summer and fall of 2021, however, vaccination rates were dropping. Dkt. # 17 at ¶¶ 14-15. The strategies that had been used earlier in the

---

[4] The relatively recent realization that the virus was transmitted through aerosol rather than droplets "implied that infections could occur over greater distances than previously thought, and in spaces that were previously inhabited by individuals with COVID-19. This mechanism explained cases and outbreaks of transmission spread over distance and over time versus direct, near contact." Dkt. # 17-1 at ¶ 56.

[5] Defendants produced the declaration and report of Dr. John B. Lynch, a board-certified infectious disease clinician, a Professor of Medicine at the University of Washington School of Medicine, and the Associate Medical Director at Harborview Medical Center. Dr. Lynch led UW Medicine's response to the COVID-19 pandemic from February 2020 to December 2023. Dkt. # 17-1 at ¶ 2.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 11

pandemic, such as masking, testing, and social-distancing, were insufficient to slow the spread of the new variant.

> Hospitalizations in the state due to COVID-19 were at an all-time high in late August of 2021. At the time, unvaccinated individuals between the ages of 16 and 64 were 10 times more likely to be hospitalized than those who were vaccinated. In September of 2021, 95% of hospitalized patients were unvaccinated.

Dkt. # 17-1 at ¶ 49 (footnotes omitted). It was in this context that King County required all executive branch employees to be fully vaccinated by October 18, 2021. Dkt. # 17 at ¶ 20.

Plaintiff and 114 other transit operators requested religious exemptions from the vaccine mandate. Dkt. # 18 at ¶ 42.[6] Defendants had made the safety of its transit operators and customers "the most important objective" throughout the pandemic, instituting a number of policies and practices suggested by the public health agencies in the hope of keeping people from contracting the virus. Dkt. # 18 at ¶¶ 30, 33, and 34. Recognizing that vaccines were a powerful tool in protecting the health and safety of its employees and the public, that "the transit operator job requires regular and frequent close contacts with members of the public (including seniors, persons with disabilities, and other marginalized and vulnerable members of the community) and other Metro employees," and that transit operators "already faced a heightened risk of contracting COVID-19," defendants refused to let unvaccinated operators continue in their employ. Dkt. # 18 at ¶ 41. Plaintiff has not produced any evidence disputing the underlying facts or casting

---

[6] The number of religious exemption requests was actually higher, but some transit operators became fully vaccinated and/or withdrew their requests. Dkt. # 19 at ¶¶ 4-5.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 12

doubt on defendants' good faith belief that the only accommodations that would reduce the risks of transmitting the virus were impossible (limiting ridership, reassignment, or telecommuting) or would cost over $40 million for the 115 operators at issue (paid leave). Dkt. # 18 at ¶ 42; Dkt. # 19-2 at 4-5.

Plaintiff argues that defendants had accommodated her religious needs for eighteen months prior to the vaccine mandate and would not have been unduly burdened by having to accept the same level of risk that prevailed during that period. Plaintiff's choice of language is confusing: there was no need to accommodate, and therefore no accommodation, before the vaccine mandate was issued. More importantly, defendants' goal and mission is to provide a safe public transit system in the King County metropolitan area. The appearance of the SARS-CoV-2 virus made that incredibly challenging for the reasons discussed above, but defendants followed the recommendations of public health agencies and initiated various practices and policies designed to reduce the likelihood of infection for their employees and customers. But masking, shielding, disinfecting, social distancing, hand washing, *etc*., proved ineffective against the Delta variant, while the Pfizer and Moderna vaccines were able to prevent over 90% of symptomatic infections and over 95% of severe disease related to the virus. Dkt. # 17-1 at ¶¶ 21, 22, and 24.[7] Given the advent of a tool that greatly reduced transmission rates and would enable defendants to offer public transportation services in a much safer manner, the question they faced was

---

[7] The Johnson & Johnson vaccine had a lower efficacy rate of 66.9%. Dkt. # 17-1 at ¶ 23.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 13

whether allowing an unvaccinated operator to greet passengers, answer questions, secure wheelchair users, provide transfers/punches, and interact in an enclosed space with vulnerable populations would be an undue hardship.

Almost every court to consider an accommodation that would create a significant health or safety risk has concluded that the risk constitutes an undue hardship for purposes of a failure-to-accommodate claim. *See, e.g, Rodrique v. Hearst Commc'ns, Inc*., 126 F.4th 85 (1st Cir. 2025); *Doe v. San Diego Unified Sch. Dist*., 19 F.4th 1173, 1180 (9th Cir. 2021); *Rolovich v. Wash. State Univ.*, No. 2:22-CV-0319-TOR, 2025 WL 48361 (E.D. Wash. Jan. 6, 2025); *Mohamed v. Full Life Care*, No. 2:22-CV-01010-KKE, 2024 WL 4371584, at *2 (W.D. Wash. Oct. 2, 2024); *Williams v. Legacy Health*, No. 3:22-CV-06004-TMC, 2024 WL 3993162, at *7 (W.D. Wash. Aug. 29, 2024); *Lavelle-Hayden*, 744 F.Supp.3d at 1158-59; *Howe v. Mass. Dep't of Corr*., No. 4:22-CV-40119-MRG, 2024 WL 3536830, at *1 (D. Mass. July 25, 2024); *Bordeaux v. Lions Gate Ent., Inc*., 703 F. Supp. 3d 1117, 1135 (C.D. Cal. 2023); *Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265(DLI)(VMS), 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023). Even courts that deny motions for summary judgment recognize that accommodations which would increase the risk of COVID-19 infections pose an undue hardship: the sticking point in those cases is that defendants had not established as a matter of law that such risks would arise. *Strandquist v. Wash. State Dep't of Soc. & Health Servs*., No. 3:23-CV-05071-TMC, 2024 WL 4645146, at *12 (W.D. Wash. Oct. 31, 2024), *reconsideration denied*, No. 3:23-CV-05071-TMC, 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024) (no evidence that

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 14

defendant evaluated the risks the proposed accommodation posed or whether the accommodation would be cost-prohibitive); *Varkonyi v. United Launch Alliance, LLC*, No. 2:23-CV-00359-SB-MRW, 2024 WL 1677523 (C.D. Cal. Feb. 21, 2024) (finding that the lack of evidence regarding infection rates among defendant's employees now that the vast majority had complied with the vaccine mandate precluded judgment as a matter of law in defendant's favor). The Court finds that in the context of this case, including defendants' mission, a transit operator's essential functions, the population served, the reduced effectiveness of existing precautions, and the efficacy of vaccines in preventing the transmission of the virus, accommodating an unvaccinated transit operator would significantly increase the risk of COVID-19 infections for the operator and the riding public, thereby posing an undue hardship on the employer.

In making this finding, the Court does not mean to suggest that the fact-specific inquiry regarding undue hardship in a COVID-19 vaccine case can be satisfied simply by pointing to a public health crisis and the scientific consensus that supports vaccine mandates. After all, the vaccine mandate itself contemplated exemptions for religious and/or medical reasons. The Court can imagine a number of King County Metro positions that could be performed in such a way that an unvaccinated employee would not threaten the safety of defendants' services, employees, or customers. But in this case the relevant factors show that plaintiff could not do her job without posing just such a risk. Nor could she, along with the other 114 transit operators who requested a religious exemption, be reassigned or put on paid leave without substantial costs. Plaintiff has not presented any

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT - 15

evidence from which a reasonable jury could conclude that accommodating plaintiff – and thereby increasing the COVID-19 risks associated with public transportation -- would not pose an undue hardship on the conduct of her employer's business.

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

Dated this 18th day of July, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge